Case 3-23-0035, Marcella Andrade, Administrator of the Estate of Victor Andrade, deceased at all appellants, v. City of Kankakee and Kankakee County Sheriff at Belize. All right, Mr. Fenneke, you may proceed. Good morning, Your Honor. Counsel, thank you. May it please the court. My name is Edmund Fenneke, and I'm here on behalf of the plaintiff appellants in this case. Your Honor, this court should reverse the Kankakee County Circuit Court's dismissal of plaintiff's complaint for two reasons. First, the lower court abused its discretion when it denied plaintiffs' leave to amend their original complaint, which was requested as alternative relief in their original responsibility. Second, the lower court erred when it granted the dismissal because that complaint could have been read liberally to infer affirmative acts by both the police and sheriff that increased the exposure of harm to the plaintiffs leading to their injuries. Your Honor, just as a brief way of background of the facts and procedural posture, this case regards a civil action filed in Kankakee looking to hold the police and sheriff accountable for a public shooting that took place in the courthouse lawn. On that day in August of 2021, plaintiff Victor Andrade was shot and killed, plaintiff Andre Glass was shot and injured, and plaintiff Miguel Andrade was shot at and forced to fight for his life, all moments after walking out of the courthouse. Plaintiffs filed a complaint that was timely under the one-year statute, and defendants filed a motion to dismiss. In their response brief, as noted, plaintiffs requested that that motion be denied, or in the alternative, plaintiffs be granted leave to amend that original complaint. Can I ask a question? We are very familiar with the procedural and factual history of the case. Let me ask this question. As it relates to the motion or desire to replete, did you ever inform the court what facts you would supplement or add to a new complaint that would satisfy 202? Or did you just suggest that there were facts that you would be able to in that oral hearing for the motion to dismiss, we tried to express to the court which actions, the affirmative ones, not the failures to prevent, we would be able to expressly put in an amended complaint. Here, we believe that they do have to be inferred. They're not specifically or expressly in there. But given the opportunity, we think we can flush those affirmative acts out so that they would withstand a motion to dismiss. Well, to find that the trial court abused its discretion as it relates to that issue, aren't we, aren't you required to show what those facts actually would be? And I guess what I'm asking is, there was no motion to reconsider, there was no amended complaint attached to a motion to reconsider, there was nothing that we're going to be able to look at at this point to say, oh, that was an abuse of discretion. Judge, I do believe at the end of that hearing, we did try to discuss with the judge that amendment and that we had requested it. We would have filed a motion to reconsider, however, the judge expressly told us to take it up on appeal. So we did believe that that judgment was a final judgment. So we did immediately file the appeal on this one. Typically, when we respond to a motion to dismiss, when it's granted, yes, we do file a copy of the amended complaint before it's even filed, as an example of what the amended pleadings would be. Here, we didn't even have that opportunity. Well, you say you didn't have that opportunity. The clerk's office was open, there was an ability to go to the clerk's office to file it, and you weren't precluded from filing the motion by the court. You just interpreted what the court said as it wasn't interested. Would that be fair? Judge, I would disagree with respect. I think that was our first request to amend it. I understood that request to be denied by the court, because it was included in our response, and it did come up at the oral argument for that hearing. So I understood the request to amend to be denied, and that that entry was with prejudice. Again, hence why we took it up, why we did want to take our first request to amend. I do believe it came within 30 or 45 days of filing that original complaint. I would say in my experience, this is the first time that request, at least in my history, has ever been denied. And in this case, we do think clearly this is a fact-specific case, especially when we're going to be addressing the issues of immunity down the road. The original complaint is lacking in those affirmative actions, absolutely, but we do think with the opportunity to amend, we can include clear facts that would survive a motion to dismiss. Well, why don't you tell us what those clear facts would be? If I can pull up on that line, Mr. Finnegan, I don't mean... I read between the lines you're surprised when you were told by judge that you would not be allowed to amend your complaint. But what source did you have for the facts of your complaint? I assume based on reading the briefs that you had no discovery prior to filing the complaint. And I also know that Mr. Andre obviously was deceased. So where did you get your information? Judge, yes, that is tricky. And our firm did handle a criminal matter for one of the plaintiffs. And a number of those facts, we still cannot rely on in our complaint, and hopefully would come out in discovery. So our complaint is based on conversations with Miguel Andrade, who was with his cousin Victor that day, and with Mr. Andre Glass before he passed away, which did happen before the filing of this complaint, as well as conversations with We are confident because of the other case that through discovery, there is support of these claims. And frankly, Your Honor, I have spoken with federal officers who are willing to testify in support of these claims. However, we cannot rely on them at this point of the pleading stage. But given the opportunity to amend, and I'd be happy to answer Judge's question about specifics, we do think we can put enough facts in there to overcome a motion to dismiss. And then through discovery process, those facts will be supported. And possibly even additional facts will be able to be added to the complaint. Yeah, if you could please answer Justice Brennan's question. Absolutely. And here there's two defendants. So there's facts that are specific to the police officers, and facts that are specific to the sheriff. So specifically with the police officers, they did meet with Victor mere hours before his court date and shooting. And they're not the only agency that met with him. These officers told Victor and encouraged him to continue through with his court date, despite knowing the high probability of the shooting, and that the threatened shooter was exactly the guy they were looking for in a homicide investigation. They had Victor in their possession. They took him home and dropped him off, and basically left them to kind of walk onto the tracks. In addition to that, these officers communicated with other departments, including the sheriff's office, about this alleged shooting. Likewise, in the morning when Victor and other civilians showed up at court, there was no warning to anyone. People came through the court business as usual. They were asked to come into unarmed, so they were not going to be able to protect themselves coming out of that courthouse. And then they were asked to leave the courthouse. There's a number of other actions that there's a number of things they could have done. But the things that they did do increased the chance that the shooting would occur, and increased the chance that these three plaintiffs would walk right into the shooting, unable to protect themselves. Well, I'm just going to... Sorry, go ahead, Justice Davenport. Mr. Kroenke, the police met with Victor, right, for a couple hours before the shooter's ID. Was that information transmitted to the sheriff, from the police department to the sheriff? Judge, that information went out to multiple agencies, is my understanding. That's another thing that we would have to shore up and discover exactly which agencies. But my we're informed of this. We've named the sheriff's office because under statute, they do maintain control at the courthouse. And they do also have the building adjacent across the street where they had personnel in, and where the shooting spilled over to. So we do believe that they had these areas under control. And with this information, they allowed the plaintiffs to in and out of the courthouse. Isn't their case law suggesting control of the grounds is not control for purposes of 202? Yes, Your Honor, but we do think the control here is fluid, and it's coming and going here. The police have control. At some point, the sheriff's office has control. I don't think it's a stretch to say that when the plaintiffs are in the courthouse, there is a great measure of control over them. If the shooting had happened inside the courthouse, that might be a more compelling argument, but it did not. Understood, Your Honor, but they did have an immense amount of control while they're in the courthouse. The sheriff's are there with their emblems, their sidearm. They essentially ushered them through that exit door, right into the gunfire. I could understand if it was blocks away or even a block away. But knowing that the shooter was going to be out there, and having them right there and just opening the door, and saying good luck to you, that increased their exposure. Stefaniki, I think the entry door for the courthouse is in the front, but it could have been different at that time. It appears that it was the southeast corner of the courthouse lawn where this occurred, based on the description and a little look at a map. I think you're very aware, judging from the arguments of the law, as it relates to this particular immunity, and simply not doing your job is not enough. Do you have some reason to believe, or some evidence, that the decedent was still under the direction? You, in oral arguments, use the word informant at some point in time. It's not in your pleadings. Do you have any evidence to take us to the next step, as if the decedent was actually acting on behalf of the police at that time? Judge, that's another one of those areas that there is discovery from an older case that essentially can't be accessed or utilized at this point. We can loosely understand Victor to be an informant. I cannot specifically tell you which departments he was working with or not. Our complaint does allege that the police picked him up, brought him to the station, and brought him home. There were other departments there working with him at that time. Again, that's something we believe after discovery, we probably would ask to amend again to conform the pleadings to the facts that do come out. Realizing at this point, we have to go on and look at what Andre was able to tell us, what Victor's family is able to tell us. Of course, he died on that day, and there were no subsequent conversations with him. But I have spoken with officers and federal agencies that were with him that night. Just so I'm clear, even if he was an informant, I'm not sure ultimately how that relates to control unless there's other information. But to the extent that he was driven by law enforcement and interviewed, he wasn't driven by law enforcement on the day of the killing, correct? Correct, Judge. But he was told to go to court, and we have to assume Victor did not believe he had a choice when the officers and a court date is set, and he's told he has to go. That appearance is not a request. He believed it to be mandatory. He was asked to go to court, told to go to court, when they didn't have to do that. We do court all the time now without going in person, Judge. Well, the police don't control that, Counsel, do they? Isn't it the courts that control court appearances? Judge, it's the court, the police, and the sheriff's officers, and we know this because it was done in the subsequent criminal trial that Miguel Andrade was found not guilty for. So if your theory of control were to prevail, every single witness who's subpoenaed by law enforcement to come to court and is shot when leaving the courthouse, that would be control for purposes of 202. Judge, I believe that the subpoena to court is one part of the control formula. Here, there was a mandatory court appearance. Victor was meeting with someone he believed empowered by the law mere hours before, and he was told to not deviate. Maybe common sense, if you just caught a subpoena and you were worried about your life, you would avoid that court date. But in this case, he was in the hands of the law mere hours before. I don't believe Victor had a choice, and from conversations with Miguel and his family, that is what they believe as well. And Judge, and again, these are circumstantial facts, but we believe him having to go to court, you know, him going into and having to exit that court, those are small facts, but did increase his risk of harm. While the list of things that could have been done may be longer, the few steps taken by the police and by the sheriff in this case did increase that exposure to harm and his ability to be injured as well as the other people at court, not just the plaintiffs. And it's because of that, we believe that section 202 applies and not 4-102. Nevertheless, Your Honors, we think that the first point, not being allowed to amend the complaint, could potentially cure this whole argument. Being given the opportunity to put these allegations into amended complaint would allow us to at least fully flush this out at the next expected motion to dismiss, but at least there'll be specific affirmative acts that the court's able to weigh against the case law to see if it's either similar enough or dissimilar enough to allow this case to proceed to discovery. And as we mentioned, we think that- Mr. Finnegan, your time is up, but you will have an opportunity in rebuttal. Thank you, Your Honors. Ms. Wysocki. Good morning, Your Honors. May it please the court. My name is Jordana Wysocki and I represent the municipal and county defendants. This court should affirm the trial court's dismissal with prejudice of plaintiff's complaint. This is a very simple issue. The issue is whether the police can be held responsible for failing to protect citizens against the criminal conduct of third parties on a public street. The simple answer to that is no. Ms. Wysocki, do you have a precise location as to where this took place? I'm sure you've been to the courthouse yourself and probably all of us at this point in time, but was it inside the sidewalk? Was it out in the street? Do you know exactly where this melee started? I don't know where it started. I know that it moved around, but I don't know exactly where it started. What I do know is that it was not in the courthouse. It was not on the courthouse steps. It was near the intersection of Harrison and Merchant Street, which as you noted is on the southeast corner behind the courthouse. I don't know what exit the decedent took when leaving the building. There is a front exit and there was a back exit. I don't know if it was open at the time, frankly. Thank you. No problem. First of all, I want to address some of the duty of care stuff, but I think the big issue in this case is of course the 4102 immunity and the duty of care for police protection and for police services. They're sides of the same coin. We have the Coleman case, which abolished the public duty rule, the common law public duty rule, but as the Fifth Circuit noted, I think last year, 2020, sorry, in the Winansky case, the Supreme Court's abolishing of the common law public duty rule did not change the 4102 analysis. The 4102 codified the public duty rule. We're still looking at that same analysis here. I think that what plaintiff is arguing is that there's some affirmative acts, whether the police said, you need to follow the court order and go make your appearance tomorrow, or if I guess the affirmative act by the sheriff's department would be making sure no one comes into the courthouse with weapons. Neither of those affirmative acts negate the 4102 duty. Even amending their complaint to add these acts, they don't change, I'm sorry, the 4102 immunity. They don't change that equation. We know that because those affirmative acts follow that special duty exception to the original common law public duty rule, but that was abolished in Coleman when the Supreme Court abolished the common law public duty. The 4102 immunity was applied in the Winansky case when the city there did take some affirmative acts. I just want to real quickly, the court noted in the Winansky case that regardless of whether or not the city performed affirmative acts as complained by the plaintiff, section 4102 immunity does make the city immune from liability. I think this whole argument that plaintiff has that they could allege more affirmative acts or they could allege that the police told Victor to go to court as ordered, that doesn't negate the 4102 immunity. All of the cases cited by plaintiff relating to the enforcing the law requires one of the elements of that is the direct and immediate control of the plaintiff, not direct and immediate control of the grounds, not direct and immediate control of the suspect, but direct and immediate control of the decedent and the plaintiff here. In this case, we don't have any of that. The fact that the police- We don't have any of that in the pleadings. I agree with you. If this case were remanded and a new pleading was allowed and there was a request for discovery, I assume that you would object to that request? Yes. I think that to the extent that they could amend it as counsel has suggested, I don't think that gets them over the 4102 hump. I don't think it makes it into a failure or inadequate enforcement of the law. The facts that counsel has mentioned that they met with Victor hours before, that there was some investigation involving the feds and told Victor to attend his court appearance, I don't see that as changing the At the heart of the matter, the plaintiff is complaining that the police failed to provide protection, that they did not provide bodyguards, that they did not escort him to wherever he was headed after court. That is completely barred by 4102. Let me ask a question, if I may. It's so interesting when you look at these cases and look at these two different immunities, but it seems to me it's possible that certain fact patterns might actually implicate both immunities, that certain fact patterns might kind of fit into both. Let me ask the question a little differently. Could performing courthouse security be a legal action for purposes of affirmative legal police activity pursuant to 202? I don't believe so, your honor. I think as your honor noted previously, is that if this had occurred in the courthouse, maybe it would be a closer call, but I still don't think it is. Performing the security in the perimeter of the building and keeping the judges and witnesses and attorneys safe, that doesn't extend to this. It doesn't extend to the grounds on the property of the courthouse? Are you just saying once they walk out the door, there's no protection for judges, nothing from enforcement? No, no. I think that the sheriff's office is responsible for that type of security. However, there's a difference between saying that the sheriff has a statutory responsibility to protect the courthouse, the grounds, the judges, et cetera, et cetera, and making that into a duty that extends to an individual in the public that is utilizing the government building. I think that there's a difference here. Ms. Wysocki, do you see a difference, though, when you say to an individual that is utilizing the courthouse facilities, to an individual who the police are utilizing as well? You mean in the case of an informant? I understand where Plaintiff is going with this, that it's this idea that if they can allege that the police used him as some sort of bait or something to draw out the shooter, that maybe... I'm speculating about what Plaintiff would allege because I don't have that. But I think that if it's an informant, we have the same problem. There's this lack of control. An informant, when they're working for the police and the police are watching them do a drug buy or something close by, the police are off the scene. They have some control. They tell them where to go, et cetera. Here, this is removed from that. The police drop him off at home, you know, give him advice or instructions or whatever the term is to follow the court order to appear in court so that there's not a warrant issued for his arrest. This seems like pretty common sense advice, but also it's not something the city police have control over. The city police don't determine who has to appear remotely versus in person. I'm sure that after the shooting, Miguel appeared remotely because there was this shooting. But that's up to the judge. Once the police drop him off at home, what he does after that, they're not controlling him in the same sense that they would an informant who was doing a drug buy or an informant that was within sights. I mean, the bottom line is the police were not present at time of the shooting. No one was, you know, the city police were not there and the sheriff's deputies were inside the building. No one was there. And that doesn't, you know, that means that there wasn't the control needed for 2202 to apply. Sorry. Can you address the amendment issue? What do you say to the plaintiff's argument that the trial court was perhaps a little too fast to suggest that there could be no amendment? Well, because the amendment issue was, so what occurred was we filed a combined motion to our 615. So the response to that there was an inadequate pleading of duties, but it wouldn't fix our affirmative defense, the immunity by 4102. That's not how that, you know, that motion functions. So the court for the purposes of our motion dismiss found that there was a duty, you know, said that, you know, even arguing there's a duty. So let's assume that you could all these affirmative acts and that this is, you know, you pled a duty. That was the assumption that the lower court made. And based on that, there's nothing, there's no amendment that gets the plaintiff around the 4102. This is at its heart, a failure to protect case. The plaintiff, you know, can, you know, they argue that there's, you know, the affirmative acts of, you know, taking weapons away or keeping him from bringing weapons into the courthouse, but that type of creative pleading, you know, it's interesting, but it's not going to get him over the 4102 hurdle. And so based on that, I think the lower court was correct. There's no, there's no reason to amend and nothing that the plaintiff has stated, you know, today or previously indicates that there's any facts that would overcome the 4102 immunity. If the court doesn't have any further questions, I see I'm almost out of time. I think that, you know, we can, I can end with just, you know, the court should affirm the trial court's dismissal with prejudice. And I thank everyone for their time. Justice Hedl, any additional questions? No other questions. Thank you. All right, Ms. Wysocki, thank you. Mr. Finnegan, rebuttal. Judges, thank you briefly. I just want to speak about a few points just regarding the layout on that day. It's my understanding that all parties did exit the south or backside of the courthouse. Um, there's a driveway, there's sheriff and police vehicles, there's a lawn, and then a sheriff's detentions, uh, personnel office across the street. So that whole area is covered almost constantly, 24 hours with sheriffs and police personnel. When they walked out of court, shooting started immediately. Other civilians, including other lawyers, were almost hit mere feet from that courthouse door. It did not, they did not wait until they got a block away. So this happened immediately when they came outside. Well, let me ask Mr. Finnegan, let me ask a question. How far is too far as it relates to control? I mean, one block away from the courthouse, five blocks away from the courthouse. I mean, at what point is the sheriff's department no longer responsible for this individual that was subpoenaed to come to court? Sure, Judge, I don't think it's the exact number, but I would say 50 to 100, 200 feet. Obviously, two blocks away out of the sight of the courthouse or sheriff's personnel, of course, they can't be asked to be everywhere at once. But when they're manning the doors, when they're preventing cars from driving up in that area, they have control of the curtilage. But how do we get past the case law that says control the curtilage, control the grounds, is not control of the plaintiff? Understood. Here, they did in the courthouse, and it mattered that they disarmed them, because it was only when Miguel got to disarm- Disarm every single person coming into the courthouse. We don't let guns come into the place. Understood. But to this plaintiff, they knew that there was a threat he would be shot upon exiting. So by asking him to come, asking him to disarm, they exposed him to harm. When Miguel was able to get to his car in a firearm, he was able to protect himself and put the shooter down. Unfortunately, he had to do that. But this did happen mere moments of walking out that door, and we think that's important, because they did have a great amount of control up until that additional- Mr. Pinicky, do you know where the car was parked? I have to approximate about 200- In the Sheriff's South parking lot, right next to the Sheriff's building, probably 200 feet from the exit door. So if you cross Merchant Street, there's a parking lot right there. Correct. That's it. And the Sheriff's office is right there. So the county apparently owns both of these blocks. Correct. And we do know there's control, because the Sheriff's office does bring witness to in and out of there safely all the time in situations like this. But nevertheless, our main point is that plaintiffs did request in writing. Illinois law allows for the general and liberal amendment of pleadings. Here, the four factors are met. There is no prejudice. We haven't moved into discovery yet, and this was our first request following our first original complaint. If we look to the second issue, there should be enough allegations in here. If Victor was not told to go, there would likely be no shooting. If they were not allowed to leave, there would likely be no shooting. In this case, it's more than a failure to protect. Those small actions made sure that the shooting would occur and that the plaintiffs were injured and potentially other people at the courthouse that day. Mr. Feneke, you seem to be unwilling to accept the fact that the Sheriff's department does not have control over the court system, and presumably in a felony case, there would have been a warrant issued if he didn't show up. Do you think that there was some duty on behalf of the Sheriff to communicate with the judicial branch and to somehow facilitate a non-appearance? There was communication between police and Sheriff, and there absolutely should have been another step of communicating with the judiciary. That, again, though, would be a failure, but we do know they do that. It's done in cases all the time with witnesses and CIs, and in this case, they had the information. The police told them to go. The Sheriff allowed him in the building. That is essentially allowing this target into the building. There should have been a number of acts that they took, but allowing him in and allowing him out did contribute to this being injured. This is not merely a failure to protect case. There are numerous facts and contexts to this. This is not a novel legal issue, but factually, this is a very unique case, Your Honor, and we do want to make sure that in the future, this doesn't happen and that the correct steps are taken by police and Sheriff that don't increase the possibility of a courthouse shooting where any attendee could be injured, and for those reasons, we ask that this court find the lower court abuses discretion when it denied us leave to amend the complaint and when it granted the motion to dismiss where affirmative acts could be inferred. We would ask that this court reverse and remand respectfully. Any additional questions? No. No. We thank both sides for spirited arguments. The court will take the matter under advisement and issue a decision in due course. Thank you very much.